UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-----------------------------------------------------------------x
LUIS M. BATISTA,                              :
                                              :
                          Petitioner,         :
                                              :        **OPINION & ORDER**
           -against-                          :          14-cv-895 (DLI)
                                              :
UNITED STATES OF AMERICA,                     :
                                              :
                          Respondent.         :
-----------------------------------------------------------------x
**DORA L. IRIZARRY, Chief United States District Judge:**

Petitioner Luis M. Batista ("Petitioner") filed this Petition[1] for a writ of habeas corpus,

challenging his sentence pursuant to 28 U.S.C. § 2255 ("Section 2255"). *See generally*, Dkt. Entry

No. 1-2 ("Petition"). On October 26, 2009, after a jury trial, Petitioner, a former detective with

the New York City Police Department ("NYPD"), was found guilty of: (1) conspiracy to distribute

and possess with intent to distribute fifty grams or more of cocaine base, five kilograms or more

of cocaine, and MDMA (also known as ecstasy) in violation of 21 U.S.C. §§ 846, 841(b)(1)(A)(iii),

841(b)(1)(A)(ii)(II), 841(b)(1)(C); (2) conspiracy to commit bank fraud in violation of 18 U.S.C.

§ 1349; (3) bank fraud in violation of 18 U.S.C. § 1344; and (4) obstruction of justice in violation

of 18 U.S.C. § 1512(c)(2). *See* Docket 06-CR-265, Entry Nos. 91, 315. On June 10, 2010, this

Court sentenced Petitioner to 180 months' imprisonment for each count, and five and three year

terms of supervised release, all to run concurrently. *Id.* at Dkt. Entry No. 362.

---

[1] Though Petitioner currently is represented by counsel, his Petition and subsequent Reply brief was filed *pro se*. In reviewing Petitioner's motion, the Court is mindful that, "[a] document filed *pro se* is to be liberally construed . . . and a *pro se* [pleading], however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers." *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (internal quotation marks and citation omitted). Accordingly, the Court interprets the Petition "to raise the strongest arguments that [it] suggest[s]." *Triestman v. Fed. Bureau of Prisons*, 470 F.3d 471, 474 (2d Cir. 2006) (emphasis, citations and internal quotation marks omitted).

Petitioner challenges his sentence on the ground that he received ineffective assistance of counsel in violation of the Sixth Amendment to the United States Constitution in connection with his narcotics conspiracy conviction. *See generally*, Petition. The government filed an opposition to the Petition, *See* Government's Opposition to Petition ("Gov't Opp'n"), Dkt. Entry No. 19, and Petitioner filed a reply in further support of the Petition, *See* Petitioner's Reply ("Reply"), Dkt. Entry No. 36. For the reasons set forth below, the Petition is denied.

## BACKGROUND

Familiarity with the facts and procedural history of this case is presumed.[2] Briefly stated, and as relevant to the disposition of the Petition, Virgil Hiciano operated a large narcotics organization in the Bushwick neighborhood of Brooklyn, New York. Hiciano used several apartments, including one at 1127 Decatur Street, for storing and packaging drugs. Petitioner developed a close, friendly relationship with Hiciano, warned Hiciano about police activity, provided Hiciano with confidential law enforcement information, and utilized law enforcement databases to conduct various warrant and address searches at Hiciano's request. Hiciano maintained that Petitioner was aware of his drug dealing, including that the Decatur Street apartment was used as a stash house. Petitioner vehemently denies this. Petitioner does not raise challenges as to his conviction for bank fraud charges and obstruction of justice. Petitioner was arrested on January 31, 2008.

The relevant facts are as follows: Upon his arrest, Petitioner hired James Moschella ("Moschella"). Declaration of Luis M. Batista ("Batista Decl.") at ¶ 3. Moschella recommended that Petitioner also retain Anthony Ricco ("Ricco"), who had experience defending high profile

---

[2]     A more complete recitation of the facts is set forth in the decisions previously issued by this Court and the Second Circuit Court of Appeals. *See United States v. Batista*, 684 F.3d 333 (2d Cir. 2012); *United States v. Batista*, 2010 WL 1193314 (E.D.N.Y. Mar. 24, 2010); *United States v. Batista*, 2009 WL 910357 (E.D.N.Y. Mar. 31, 2009).

NYPD cases. *See Id.* Moschella and Ricco represented Petitioner at trial. Two potential conflicts of interest arose regarding one of the government's witnesses, Lieutenant Robert Rios ("Rios"): First, Moschella had previously represented Rios (Petition at 3), and second, since Moschella had conversations with Rios prior to trial, he was a potential witness for the defense (*Id.*).

During trial preparation, Petitioner informed his counsel that, during an NYPD meeting in May 2006, he told Rios that he knew Hiciano and he "was prepared to assist Rios in his investigation of Hiciano." Batista Decl. at ¶ 4. Petitioner's counsel subsequently included Petitioner's account of this conversation in its trial brief. Petition at 3. Moschella attempted to verify this conversation, which he could not do, and the government argued that Rios disputed Petitioner's account of their conversation. *Id.*; *See also* Declaration of James Moschella ("Moschella Decl."), Dkt. Entry No. 17, at ¶ 6; Batista Decl. at ¶ 6. Therefore, Moschella was a potential rebuttal witness to Rios' testimony.

The Court was aware of the potential conflicts of interest, and, on August 27, 2009, held a *Curcio* hearing to advise Petitioner of his right to conflict-free counsel. *See* Batista Decl. at ¶ 9. Petitioner had conflict-free counsel at the hearing by way of Ricco's representation. At the hearing, the Court explained that "this [was] a situation where [Petitioner] can waive th[e] conflict," but also warned Petitioner that he "may also be waiving the right to have [his] attorney become a witness in the case." *See* Ex. A to Petition, Aug. 27, 2009 Hr'g Tr. ("*Curcio* Tr.") at 7:6-8. Petitioner told the Court, "I spoke to both my counsel, Mr. Ricco, Mr. Moschella; and they explained to me thoroughly. I do have a good understanding, and I wish to waive that conflict." *Id.* at 8:7-9. The Court then engaged in a lengthy colloquy with the parties regarding Moschella's potential rebuttal testimony. *See generally*, *Curcio* Tr. Having discussed that Moschella would not be available as a rebuttal witness, the Court then asked, "is all this satisfactory to you, Mr.

Batista," to which he responded, "yes." *Id.* at 26:3-18. Petitioner claims that, during a recess in the hearing, which the transcript indicates was briefly held at the very end of the hearing, he told his counsel he did not want to forgo Moschella's testimony and did not want to waive the conflict, but his counsel "insist[ed] . . . that Moschella continue as co-counsel rather than testify for [Petitioner]." Petition at 4-5; *Curcio* Tr. at 29:6-10. Neither Petitioner nor his counsel made any further statements on the record at the hearing. The Court accepted Petitioner's waiver. *See generally*, *Curcio* Tr.; Minute Entry dated Aug. 27, 2009.

Prior to trial, the government extended a plea offer that dismissed all counts if Petitioner pled guilty to obstruction of justice. Petition at 20. The parties dispute when the government made the offer: the government claims it made the offer "near the end of August," expiring at midnight on August 27, 2009 (Gov't Opp'n at 8 n.3), and Petitioner claims Ricco told him of the offer "after the first day of jury selection" (Petition at 20). The first day of jury selection was September 14, 2009. *See* Dkt. Entry No. 242. Nonetheless, Petitioner's counsel communicated the offer to Petitioner, and Petitioner's counsel discussed the offer with him. Batista Decl. at ¶¶ 88-92. Petitioner declined the offer and proceeded to trial. Petition at 21.

During his trial testimony, Petitioner admitted, under oath, that his description to counsel of his conversation with Rios was inaccurate, effectively confessing to perjury. *Id.* at 7. A key piece of evidence for the government was Petitioner's computer searches, which showed warrant information for Hiciano's Decatur Street apartment. *See Id.* at 9. To introduce and explain this evidence, the government called Sergeant George Tom ("Sergeant Tom"), a computer specialist, to testify about various NYPD databases. *Id.* at 10-11. Ricco cross-examined Sergeant Tom about the information available in the databases and what the search results showed. *See Id.* at 12; Ex. B to Petition ("Trial Tr.") at 1974:3-1990:15. In addition, a Federal Bureau of Investigation

("FBI") report that detailed statements made by Hiciano about the Decatur Street address was not introduced as evidence or used during cross-examination of Hiciano. Petition at 9; Ex. E to Petition ("FBI report").

A jury convicted Petitioner of all charges, and, on June 10, 2010 this Court sentenced him to 180 months' imprisonment. Petitioner appealed his conviction, alleging, *inter alia*, that: (1) the evidence was insufficient to sustain the conviction for conspiracy to possess and distribute ecstasy; (2) a sleeping juror deprived him of due process; (3) the trial court erred in its translation of a Spanish phrase; and (4) the government's summation was improper. *Batista*, 684 F.3d at 339. The Second Circuit affirmed, *Id.* at 340, and the Supreme Court denied *certiorari*. *Batista v. United States*, 568 U.S. 1196 (2013).

On or about January 27, 2014, Petitioner filed the instant Petition, alleging ineffective assistance of counsel. *See generally*, Petition. The Petition recasts several arguments made before the Second Circuit as ineffective assistance claims, including that Petitioner's counsel failed to: (1) challenge the legal sufficiency of the ecstasy charge; (2) seek the removal of the sleeping juror; (3) challenge the Court's ruling on the Spanish translation; and (4) object to the government's summation. *Id.* at 14-20. The Petition also asserts for the first time that Petitioner's counsel was ineffective in: (5) failing to call co-counsel as a witness at trial; (6) advising Petitioner "falsely" to admit to perjury; (7) failing to admit the FBI report; (8) performing a "perfunctory" and ineffectual cross-examination of Sergeant Tom; and (9) advising Petitioner to reject a plea offer. *Id.* at 2-14, 20-21. Finally, Petitioner contends that his conviction was so tainted with incompetent counsel that it must be vacated. *Id.* at 21-25. Petitioner's trial counsel submitted declarations refuting each of Petitioner's claims. *See generally*, Moschella Decl.; Declaration of Anthony L. Ricco ("Ricco Decl."), Dkt Entry No. 12.

**<u>DISCUSSION</u>**

## I.   Legal Standard

### A.   Section 2255

Under Section 2255, a sentencing court may vacate, set aside or correct a conviction or sentence imposed in violation of the Constitution or laws of the United States. 28 U.S.C. § 2255. Relief generally is "available only for a constitutional error, defect of jurisdiction, or an error of law constituting a fundamental defect which inherently results in a complete miscarriage of justice." *Scala v. United States*, 2010 WL 3780320, at *1 (E.D.N.Y. Sept. 21, 2010) (citations and internal quotation marks omitted).

### B.   Issues Previously Raised on Appeal

It is well settled that a Section 2255 motion may not relitigate issues previously raised on direct appeal. *See, e.g.*, *Cantor v. United States*, 205 F.3d 1321, *1 (2d Cir. 2000) (summary order) (citing *United States v. Perez*, 129 F.3d 255, 260 (2d Cir. 1997)) ("[I]t is well-established that issues decided on direct appeal may not be relitigated in the context of a petition under § 2255."), *cert. denied*, 530 U.S. 1245 (2000); *Simmons v. United States*, 2014 WL 4628700, at *2 (E.D.N.Y. Sept. 15, 2014) ("[H]aving rejected his objection [to the court's application of the sentencing enhancement], he cannot reargue it in his § 2255 petition."). An exception to this rule exists for intervening changes in the law. *See Scala*, 2010 WL 3780320, at *1 (citing *Chin v. United States*, 622 F.2d 1090, 1092 (2d Cir. 1980)). This exception is not applicable here.

Courts reviewing Section 2255 claims will consider arguments not raised on direct appeal if the petitioner can demonstrate "cause" for failing to raise the claims and "actual prejudice," or that the petitioner is "actually innocent." *See Bousley v. United States*, 523 U.S. 614, 622-23 (1998) (citations and internal quotation marks omitted). However, ineffective assistance of

counsel claims "may be brought in a collateral proceeding under § 2255, whether or not the petitioner could have raised the claim on direct appeal." *See Massaro v. United States*, 538 U.S. 500, 504 (2003). Nonetheless, a petitioner cannot simply recast previously made arguments as ineffective assistance claims. *See Cakoni v. United States*, 2015 WL 1726448, at *10 (S.D.N.Y. Apr. 15, 2015) (citing *Yick Man Mui v. United States*, 614 F.3d 50, 55 (2d Cir. 2010)) ("The Second Circuit has already rejected these arguments . . . and they cannot be recast as ineffective assistance arguments and relitigated via a § 2255 petition in the absence of an intervening change in the law."); *Brown v. United States*, 1996 WL 479248, at *4 (S.D.N.Y. Aug. 23, 1996) ("[Petitioner's] attempt to recast his substantive arguments regarding sentencing errors in terms of ineffective assistance of counsel is unavailing.").

### C. Ineffective Assistance of Counsel

To succeed on a claim of ineffective assistance of counsel, a petitioner must show that (1) "his attorney's performance 'fell below an objective standard of reasonableness,' in light of 'prevailing professional norms,'" and (2) "'affirmatively prove prejudice' arising from counsel's allegedly deficient representation." *United States v. Caracappa*, 614 F.3d 30, 46 (2d Cir. 2010) (citing *Strickland v. Washington*, 466 U.S. 668, 688, 693 (1984); *United States v. Cohen*, 427 F.3d 164, 167 (2d Cir. 2005)). Courts reviewing ineffective assistance claims "must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance; that is, the defendant must overcome the presumption that, under the circumstances, the challenged action might be considered sound trial strategy." *Strickland*, 446 U.S. at 689 (citation and internal quotation marks omitted). Courts must "be watchful to eliminate the distorting effects of hindsight." *Brown v. Greene*, 577 F.3d 107, 110 (2d Cir. 2009) (citation and internal quotation marks omitted).

## II.     Analysis

### A.     Arguments Raised on Direct Appeal

Petitioner contends that his counsel was constitutionally ineffective in failing to: (1) challenge the legal sufficiency of the ecstasy distribution charge; (2) seek the removal of a sleeping juror; (3) challenge the translation of the Spanish phrase "loco cuidate"; and (4) object to the government's summation.  *See* Petition at 14-20.  The government opposes, contending that these claims are barred procedurally because they were raised on appeal.  Gov't Opp'n at 3-5.  In reply, Petitioner contends that his Section 2255 claims rest on legal grounds independent of those raised on appeal, namely, ineffective assistance of counsel.  Reply at 1.

Here, Petitioner made each of these four arguments on appeal, with the minor addition that Petitioner now claims that each of them demonstrates constitutionally ineffective assistance of counsel.  For example, Petitioner argued on appeal that "the evidence was insufficient to sustain a guilty verdict on Count One, which charged membership in a conspiracy to possess and distribute cocaine and ecstasy."  *Batista*, 684 F.3d at 339.  Now, Petitioner claims that he received ineffective assistance of counsel because his trial counsel "incompetently failed to challenge the legal sufficiency of the ecstasy charge."  Petition at 14.  Petitioner also argued on appeal that "he was denied due process of law when at least one juror allegedly slept through parts of his trial."  *Batista*, 684 F.3d at 340.  Now, he argues that his counsel was ineffective in "fail[ing] to seek the removal of a sleeping juror."  Petition at 16.  Petitioner also challenged on appeal the Court's use of a "particular translation of a Spanish slang phrase," *Batista*, 684 F.3d at 341, and he now claims that his counsel "incompetently failed to challenge the court's erroneous and highly prejudicial ruling regarding the translation of certain key testimony," Petition at 17.  Finally, Petitioner argued on appeal that the government made "improper closing arguments."  *Batista*, 684 F.3d at 342.  He

now claims that his counsel was ineffective in failing to object to "prejudicial statements in the government's summation." Petition at 19.

These arguments are simply thinly veiled attempts to relitigate the same issues previously decided by this Court, both during trial and post-verdict motion practice, and affirmed by the Second Circuit. While a petitioner can assert ineffective assistance of counsel claims for the first time in a Section 2255 motion, *See Massaro*, 538 U.S. at 504, the Court sees no reason to address the identical substantive arguments already considered and rejected by the Circuit simply because Petitioner now relabels them as ineffective assistance claims. *See Cabrera v. United States*, 972 F.2d 23, 25 (2d Cir. 1992) (quoting *Barton v. United States*, 791 F.2d 265, 267 (2d Cir. 1986) (per curiam)) ("'[S]ection 2255 may not be employed to relitigate questions which were raised and considered on direct appeal.'"); *Cakoni*, 2015 WL 1726448, at *10 ("The Second Circuit has already rejected these arguments.") (citation omitted); *Brown*, 1996 WL 479248, at *4 (rejecting arguments recast as ineffective assistance claims). Therefore, Petitioner's claims regarding the legal sufficiency of the ecstasy distribution charge, the sleeping juror, the Spanish translation, and the government's summation are denied.

### B. Failing to Call Co-Counsel as a Witness

Petitioner contends that his trial counsel was constitutionally ineffective in refusing to call Moschella, Petitioner's trial co-counsel, as a witness. Petition at 2-6. Specifically, Petitioner alleges that Moschella could have rebutted Rios' testimony and testified that Petitioner told Rios he would assist with the investigation of Hiciano, but Moschella was not called because he stayed on as Petitioner's counsel. *Id.* at 3-5. Petitioner also contends that he only waived Moschella's conflict of interest, thereby forgoing Moschella's testimony, because of his counsel's insistence against his protest. *Id.* at 4-5. In opposition, the government argues that Petitioner was not

prejudiced in the absence of Moschella's testimony because: (1) there were strategic reasons for not calling Moschella as a witness, and (2) Moschella's declaration makes clear that he could not corroborate Petitioner's testimony and, therefore, could not rebut Rio's testimony. Gov't Opp'n at 5-6; Moschella Decl. at ¶ 6.

"The decision not to call a particular witness is typically a question of trial strategy that [reviewing] courts are ill-suited to second-guess." *Greiner v. Wells*, 417 F.3d 305, 323 (2d Cir. 2005) (citing *United States v. Luciano*, 158 F.3d 655, 660 (2d Cir. 1998) (per curiam)) (alteration original and internal quotation marks omitted). "[C]ounsel's decision as to whether to call specific witnesses—even ones that might offer exculpatory evidence—is ordinarily not viewed as a lapse in professional representation." *Id.* (citing *United States v. Best*, 219 F.3d 192, 201 (2d Cir. 2000)) (internal quotation marks omitted); *See also Perkins v. Comm'r of Corr. Servs.*, 218 F. App'x 24, 26 (2d Cir. 2007) (summary order) (not calling alibi witness is trial strategy and not ineffective assistance of counsel).

Here, both of Petitioner's trial counsel submitted sworn declarations setting forth their strategies in not calling Moschella to the stand. First, and perhaps most importantly, Moschella states that he "would not have been able to testify as [Petitioner] now claims," and "could not . . . confirm the substance of any conversation [he] had with Rios [about what Petitioner told Rios]." Moschella Decl. at ¶ 6. Second, had Moschella testified, he states that he "likely would have corroborated the Government's argument that [Petitioner] made false and obstructive statements not only to [the NYPD], but to his own attorney, knowing such statements would be used in his defense." *Id.* To be sure, Moschella states that "[t]he decision to call any witnesses or use any evidence was the product of strategic decisions by counsel." *Id.* at ¶ 9.

Ricco's declaration further refutes Petitioner's claim. Ricco details how, after Petitioner told Moschella of his conversation with Rios about assisting with the Hiciano investigation, Moschella contacted Rios to confirm the details of the conversation. Ricco Decl. at 4-5. However, Rios could not confirm the conversation as Petitioner described it. *Id.* at 5. Based on this, Ricco's other interactions with Petitioner in preparing for trial, and having "no independent evidence of the existence of this self-serving conversation" between Petitioner and Rios, Ricco concluded that he "had no good faith basis to conclude that the conversation – as claimed and stated by [Petitioner] – ever actually took place in the first instance." *Id.* at 5-6. Ricco's declaration states that "there were no credible facts discovered or established during our trial preparation which would have provided a basis to call James Moschella as a rebuttal witness to the testimony of Lieutenant Robert Rios." *Id.* at 6-7. Since Petitioner's counsel has provided ample strategic bases for not calling Moschella as a rebuttal witness, and decisions regarding which witnesses to call to testify are ordinarily left to the sound judgment of the trial attorneys, Petitioner's ineffective assistance claim fails. Indeed, it appears from the sworn declaration of both trial counsel that, to do as Petitioner claims they should have, could have been detrimental to Defendant's case.

Moreover, to the extent Petitioner challenges his waiver of any conflict of interest between him and Moschella, the Court finds this argument less than credible. At the August 27, 2009 *Curcio* hearing, Petitioner had conflict-free counsel by way of Mr. Ricco, who Petitioner does not contend was conflicted. Petitioner indicated on the record that he understood his right to conflict-free counsel, had discussed the potential conflict with his attorneys, and wished to waive the potential conflict with Moschella, including forgoing his testimony. *See* Minute Entry dated Aug. 27, 2009; *See also Curcio* Tr. at 7:6-8 ("[I]t seems to me that this is a situation where you can waive that conflict but you may also be waiving the right to have your attorney become a witness

in the case."); *Id.* at 8:7-9 ("I spoke to both my counsel, Mr. Ricco, Mr. Moschella; and they explained to me thoroughly. I do have a good understanding, and I wish to waive that conflict."); *Id.* at 26:3-18 (Court: "[I]s all this satisfactory to you, Mr. Batista?" Petitioner: "Yes."). Accordingly, the Court finds that Petitioner knowingly waived any potential conflict with Moschella.

### C. Advising Petitioner to Admit to Untruthful Statements

Petitioner next contends that his counsel was constitutionally ineffective in advising him to "falsely 'admit' [on the witness stand] that he lied to Moschella about his conversation with Rios." Petition at 6. Petitioner argues that his attorneys insisted he give this false testimony to protect the attorneys' own interests, which Petitioner claims is evidenced by his trial counsel's testimony at a side bar during the trial. *Id.* at 7-8. In opposition, the government argues that declarations from Petitioner's counsel directly refute Petitioner's claim. Gov't Opp'n at 6. Petitioner's counsel, Ricco, contends that the side bar conversation "simply relate to an attorney's obligation . . . not to become an unsworn witness before the jury during the presentment of evidence and/or examination of witnesses." Ricco Decl. at 11-12.

"Where . . . a habeas court is faced with self-serving allegations that are contradicted by a credible affirmation by a trial attorney, it may choose to credit the attorney and dismiss the ineffective assistance of counsel claim without further hearings." *Vargas v. United States*, 2007 WL 2246004, at *8 (E.D.N.Y. July 31, 2007) (quoting *Castrillo v. Breslin*, 2005 WL 2792399, at *13-14 (S.D.N.Y. Oct. 26, 2005)); *See also Thai v. United States*, 2007 WL 13416, at *6 (E.D.N.Y. Jan. 2, 2007) (finding no ineffective assistance of counsel where petitioner's only evidence was his "own self-serving testimony," which was contradicted by the affidavit of his defense counsel, which described an "entirely credible" version of events). A habeas court has a "responsibility

to . . . make a credibility finding in each case," though "in most circumstances a convicted felon's self-serving testimony is not likely to be credible." *See Purdy v. Zeldes*, 337 F.3d 253, 259 (2d Cir. 2003).

Here, setting aside the fact that Petitioner has admitted to committing perjury during his trial, Petitioner offers nothing in support of his claim other than his own self-serving affidavit. *See* Batista Decl. at ¶¶ 21-37 ("[Ricco] g[ave] me the extraordinarily incompetent advice to testify falsely at trial that I had lied to Moschella about my conversation with Rios."). Sworn declarations by his trial counsel refute his account. Ricco's declaration states that Petitioner's claim "is a complete fabrication," and "[a]t no time did [Ricco] ever advise [Petitioner] to testify falsely at his trial, nor h[as] [Ricco] ever instructed any individual to commit such an act in [his] 32 years of criminal defense practice." Ricco Decl. at 11. Moreover, Petitioner does not claim that Ricco was conflicted. Indeed, Ricco points out that he "did not have any personal interest in this case to protect." *Id.* As a disinterested party, Ricco highlights his "obligation to protect the rights of [Petitioner], and at the same time, as an officer of this court, to protect and preserve the integrity of the court proceedings in the performance of [his] duties." *Id.* In light of Petitioner's counsel's sworn statements contradicting Petitioner's claim, the Court finds that Petitioner has failed to state a claim for ineffective assistance based on his admission that he gave false testimony.

### D. Failing to Admit the FBI Report

Petitioner next contends that his counsel was constitutionally ineffective in not seeking to admit an FBI report he alleges contradicts Hiciano's testimony. Petition at 9. He further argues that his counsel did not advise him of the report's existence. *Id.* at 10. In opposition, the government argues that: (1) there is no ineffective assistance claim because the report was inadmissible; (2) even if it were admissible, the report does not contradict Hiciano's testimony;

and (3) Moschella's declaration flatly contradicts Petitioner's purported unawareness of the report. Gov't Opp'n at 6-7.

Police reports offered by the defendant are admissible under the business records exception to the hearsay rule. *See United States v. Carneglia*, 256 F.R.D. 384, 391 (E.D.N.Y. 2009) (citing *United States v. Snyder*, 787 F.3d 45, 77 (10th Cir. 1977)). However, the court still must determine whether each of the statements contained in the report is admissible, since, under Rule 802, "[h]earsay is admissible only if it falls within an enumerated exception." *United States v. Cummings*, 858 F.3d 763, 772 (2d Cir. 2017) (citing Fed. R. Evid. 802). Failing to seek to admit inadmissible evidence does not constitute ineffective assistance of counsel. *See, e.g.*, *United States v. Darling*, 519 F. App'x 58, 60 (2d Cir. 2013) (quoting *United States v. Regalado*, 518 F.3d 143, 149 n.3 (2d Cir. 2008)) ("'[F]ailure to make a meritless argument does not amount to ineffective assistance.'").

Here, Hiciano's statements are inadmissible hearsay. Since Hiciano testified at trial, and Petitioner argues for the admission of Hiciano's out-of-court statements in the FBI report for their truth in supporting Petitioner's defense, they are inadmissible hearsay. *Cummings*, 858 F.3d at 777 ("'The hearsay rule is generally said to exclude out-of-court statements offered for the truth of the matter asserted because . . . of [the] risk peculiar to this kind of evidence.'"). No exception to the hearsay rule applies here. Nor does Rule 613 of the Federal Rules of Evidence, which permits a party to refer to a witness' prior inconsistent statement, apply since the contents of the FBI report do not contradict Hiciano's testimony. *See* Fed. R. Evid. 613; Gov't Opp'n at 7. *Compare* Ex. B to Batista Decl. ("Hiciano Trial Testimony") at 494:7-25, 496:11-498:5, *with* Ex. E to Batista Decl. ("FBI Report").

Furthermore, Petitioner's claim that his counsel failed to disclose the FBI report to him is rebutted by Moschella's sworn declaration. *See* Moschella Decl. at ¶ 10 ("It is untrue that this report was not reviewed with [Petitioner] or was 'forgotten' at trial.").[3] Accordingly, the Court finds that Petitioner's claim regarding the FBI report lacks merit.

### E. Cross-Examination of Sergeant Tom

Petitioner contends that his counsel was "unprepared" to cross-examine Sergeant Tom, a computer specialist, who testified regarding Petitioner's searches on NYPD databases. Petition at 10-14. Petitioner further contends that Moschella had planned to cross-examine Sergeant Tom, given his familiarity with NYPD protocols and databases, but, over Petitioner's objections, Ricco performed a "very brief and perfunctory cross-examination." *Id.* at 12.[4] In opposition, the government argues that Petitioner's claims of being ignored are rebutted by his counsel's declarations, and that Petitioner cannot demonstrate prejudice because he has not shown that Moschella could have more effectively cross-examined Sergeant Tom. Gov't Opp'n at 7-8.

"Decisions about 'whether to engage in cross-examination, and if so to what extent and in what manner, are . . . strategic in nature' and generally will not support an ineffective assistance claim." *Dunham v. Travis*, 313 F.3d 724, 732 (2d Cir. 2002) (quoting *United States v. Neresian*, 824 F.2d 1294, 1321 (2d Cir. 1987)) (decision not to impeach witness was strategic and therefore

---

[3]     The government's late disclosure of the FBI report, and the doubt it cast on the reliability of Hiciano's testimony, was addressed in defendant's Rule 33 motion, which preceded Petitioner's sentencing and appeal. *See* Ex. F to Petition, Def.'s Rule 29 Reply Memo. of Law (Dkt. 06-CR-265, Entry No. 329).

[4]     Petitioner additionally contends that Ricco "simply refused to spend time with [Petitioner] to sufficiently apprise him[] of the facts of the case," and that Ricco ignored him during the trial. Batista Decl. at ¶¶ 46-47. These characterizations, which are insufficient to state a claim for ineffective assistance of counsel, are also belied by the declarations of Petitioner's trial counsel. *See* Ricco Decl. at 14 ("James Moschella and I expended hundreds of hours devoted to the preparation of the examinations of the witnesses in this case. The preparation included many meetings with Luis Batista . . . as well as review of recorded conversations at the detective squad, and review of intercepted telephone conversations."); Moschella Decl. at ¶ 4 ("[C]ounsel spent hundreds and hundreds of hours, including countless nights and weekends, poring [*sic*] over voluminous discovery and devising the best possible defense to charges contained in the indictment.").

not a basis for ineffective assistance claim); *United States v. Luciano*, 158 F.3d 655, 660 (2d Cir. 1998) ("[T]he conduct of examination and cross-examination is entrusted to the judgment of the lawyer, and an appellate court on a cold record should not second-guess such decisions unless there is no strategic or tactical justification for the course taken.").

Here, the cross-examination of Sergeant Tom was not constitutionally ineffective. As Ricco points out (Ricco Decl. at 14-15), Petitioner's claim is not supported by the record. *See generally*, Ex. B to Petition, Tr. of Cross-Examination of Sergeant Tom, 1974:3-1990:15. One issue at trial concerned the searches Petitioner performed related to warrants for Hiciano. During cross-examination, Ricco questioned Sergeant Tom regarding three NYPD computer systems: (1) DECS (the Drug Enforcement Coordination System, about which the witness did not have knowledge); (2) BADS (the Booking, Arraignment, and Disposition system); and (3) ADW (the Automated DB2 Warrant System). *Id.* Through cross-examination, Ricco was able to explain to the jury what information BADS and ADW provided, how that information is accessed, and demonstrate that at least six other NYPD officers searched for Hiciano using either his name or New York State Identification Number ("NYSID"). *Id.* at 1986:20-1988:23 ("Q: So my question was: Mr. Hiciano appears to be or appears to have been the subject of several officers' inquiry; isn't that correct? A: Different individuals have ran [*sic*] that name, correct."). At the conclusion of his cross-examination, Ricco also checked with Moschella whether there were any additional questions from the defense team. *Id.* at 1989:22-1990:2.

In addition, as Moschella points out, Batista himself testified in rebuttal to Sergeant Tom's description of what the database searches showed and why Batista performed the searches that he did. Moschella Decl. at ¶ 17. However, the timing of the search for the Decatur Street apartment, which the government demonstrated was done while Petitioner was on the phone with Hiciano,

was damning to Petitioner's defense. *Id.* ("There was nothing I, Mr. Ricco or anyone else could have said to negate this very damning fact.").

Petitioner also claims that he complained to Moschella about Ricco's cross-examination of Sergeant Tom (Batista Decl. at ¶ 56), but this claim is not supported by Moschella's declaration. Accordingly, based on the arguments presented by the Petitioner, and having presided over the trial and witnessed the performance by Petitioner's counsel, the Court finds that Petitioner's counsel was not constitutionally ineffective in its cross-examination of Sergeant Tom. *Cordero v. United States*, 2007 WL 4248290, at *2 (E.D.N.Y. Nov. 30, 2007) (denying ineffective assistance claim where "the record refute[d] [petitioner's] contention that counsel did not thoroughly cross-examine [g]overnment witnesses or adequately contest the [g]overnment's case"); *Clarke v. Mazzuca*, 2002 WL 1837367, at *8 (S.D.N.Y. Aug. 6, 2002) (citing *United States v. Eisen*, 974 F.2d 246, 265 (2d Cir. 1992)) (internal quotation marks omitted) ("[Petitioner's] trial counsel thoroughly cross-examined Sergeant Spottke . . . [and] [t]rial counsel's decisions on how to discredit the officer[] . . . fall squarely within the ambit of trial strategy.").

### F. Rejecting the Plea Offer

Petitioner contends that his counsel was ineffective in advising him to reject a plea offer that dismissed all charges if he pled guilty to obstruction of justice. Petition at 20. Specifically, Petitioner alleges that Ricco advised him to accept the offer, which would likely result in a sentence of forty-eight to sixty months, "only if [he] had actually assisted Hiciano in his drug operation," and that a "competent attorney would have assessed [the] obvious risk [of conviction on all counts] regardless of the actual facts and advised him with less certainty as to the outcome" of rejecting the plea. *Id.* at 20-21. In opposition, the government argues that Petitioner's claim is refuted by

sworn statements from his counsel and that Petitioner likely would not have pled guilty. Gov't Opp'n at 8-9.

"The Sixth Amendment right to effective counsel 'extends to the plea-bargaining process.'" *Hamilton v. United States*, 592 F. App'x 43, 44 (2d Cir. 2015) (summary order) (citing *Lafler v. Cooper*, 566 U.S. 156, 162 (2012)). Constitutionally effective counsel includes (1) advising the defendant of "the terms of the plea offer"; (2) "inform[ing] the defendant of the strengths and weaknesses of the case against him"; and (3) informing the defendant of "the alternative sentences to which he will most likely be exposed." *Purdy v. United States*, 208 F.3d 41, 44-45 (2d Cir. 2000) (citations omitted). Ultimately, the "decision whether to plead guilty must be made by the defendant." *Id.* at 45 (citing Model Rules of Professional Conduct Rule 1.2(a)).

Ineffective assistance claims regarding plea bargaining are governed by *Strickland*. *See Missouri v.* Frye, 566 U.S. 134, 140 (2012) ("[C]laims of ineffective assistance of counsel in the plea bargain context are governed by the two-part test set forth in *Strickland*."). To establish prejudice in the context of plea bargaining, "a defendant must show [that] the outcome of the plea process would have been different with competent advice." *Lafler*, 566 U.S. at 163 (citation omitted). When the alleged prejudice arises from the rejection of a plea offer,

> a defendant must show that but for the ineffective advice of counsel there is a reasonable probability that the plea offer would have been presented to the court (*i.e.*, that the defendant would have accepted the plea and the prosecution would not have withdrawn it in light of intervening circumstances), that the court would have accepted its terms, and that the conviction or sentence, or both, under the offer's terms would have been less severe than under the judgment and sentence that in fact were imposed.

*Id.* at 163-64.

Courts in this Circuit "require[] some objective evidence other than defendant's assertions to establish prejudice." *Pham v. United States*, 317 F.3d 178, 182 (2d Cir. 2003) (citation omitted).

A significant sentencing disparity between the plea offer and the ultimate sentence can be objective evidence of prejudice. *Id.* at 183 ("We have held that where the disparity in potential sentences is great, a finder of fact may infer that defendants who profess their innocence still will consider a plea."). However, a finding of prejudice "is not mandated where . . . the Court determines that the defendant's assertions that he would have accepted the plea are not credible." *Meszaros v. United States*, 201 F. Supp.3d 251, 275 (E.D.N.Y. Aug. 15, 2016) (citing *United States v. Frederick*, 526 F. App'x 91, 93 (2d Cir. 2013)).

Here, Petitioner concedes that his counsel conveyed the government's plea offer to him. Batista Decl. at ¶ 88. However, Petitioner claims that his counsel "never discussed with [him] weighing the likelihood of an acquittal against the prospect of a lengthy prison sentence if convicted." *Id.* at ¶ 91. He further claims that his testimony at trial that he was "willing to plea[d] guilty to the bank fraud charges" is evidence of a willingness to plead guilty to obstruction of justice. *Id.* at ¶ 92. For the reasons set forth below, the Court finds Petitioner's arguments unpersuasive.[5]

First, the Court is not persuaded by Petitioner's analogy to his willingness to plead guilty to the bank fraud charges. As the government points out, there is a significant disparity between the sentencing guideline ranges ("SGR") for the bank fraud and obstruction of justice charges. *See* Gov't Opp'n at 9. The Court cannot conclude that Petitioner's willingness to plead guilty to bank fraud, with a SGR of zero to six months' imprisonment, evidences his willingness to plead guilty to obstruction of justice, with a SGR of 97-121 months' imprisonment. *Id.*

---

[5] Though not specifically requested, the Court declines to hold an evidentiary hearing on Petitioner's claims. Where, as here, a "petitioner brings 'a generic claim . . . based solely on his own highly self-serving and improbable assertions,' and when counsel provides a 'detailed description of events [that is] eminently credible,' a district court may dispose of a section 2255 motion without holding a full-blown evidentiary hearing." *Lugo v. United States*, 2014 WL 7140456, at *19 (E.D.N.Y. Dec. 12, 2014) (alterations in original) (quoting *Chang v. United States*, 250 F.3d 79, 86 (2d Cir. 2001)).

Second, Petitioner's counsel has submitted a sworn declaration contradicting Petitioner's account of the advice given regarding the government's plea offer. While Petitioner claims that Ricco informed him that the government's plea offer "was a sign that [the government's] case was weak" (Batista Decl. at ¶ 90); he should "reject the plea offer proceed to trial" because he had "'a great defense;'" and Ricco was "'very confident' that [Petitioner] would be acquitted" (*Id.* at ¶ 91), Ricco characterizes Petitioner's claims as "a total and complete falsehood" (Ricco Decl. at 18).

According to Ricco, he and Moschella "informed [Petitioner] of the benefits of accepting a guilty plea in this case and [the] consequences of proceeding to trial." *Id.* Petitioner's counsel "strongly recommended to [Petitioner] that it was in his best interest to accept the government's plea offer to a charge of obstruction," and "[i]t was [Petitioner], not his counsel, who insisted upon proceeding to trial." *Id.* Defense counsel "made every effort to convince [Petitioner] to accept the plea offer," speaking with him "right up to midnight on the deadline date for acceptance of the plea offer," but Petitioner "stubbornly and unreasonably rejected the plea offer." *Id.* Moschella's declaration similarly states that counsel conveyed to Petitioner that it was "in his best interests" to accept the plea offer, but "[d]espite [their] advice, [Petitioner] elected to reject the offer and proceed to trial." Moschella Decl. at ¶ 5. According to Moschella, Petitioner conveyed to his counsel that he "'could not plead guilty to something he didn't do.'" *Id.*

Third, while Petitioner now claims that he would have accepted the government's plea offer, his protestations of innocence throughout trial and in his Petition undermine the credibility of his self-serving assertion. *See, e.g.*, Petition at 3 ("In his defense, Batista maintained that he had never assisted Hiciano."); *Id.* at 21 ("Batista in fact had not assisted Hiciano."); Batista Decl. at ¶ 4 ("I maintained at all times that I had never assisted Hiciano."); *Batista*, 684 F.3d at 338 ("[Petitioner] vehemently disputed the government's contention that he had conspired with

Hiciano to protect the latter's narcotics trafficking organization."). Thus, Petitioner's own statements are more consistent with Moschella's account that Petitioner asserted he would not and could not plead guilty to something he did not do, and significantly undermine any inference that he would have accepted the plea offer. *See Meszaros*, 201 F. Supp.3d at 276 (holding that petitioner "undermine[d] his attempt to argue that he would have accepted a plea" by "consistently and unequivocally assert[ing] his innocence."). The Court finds that Petitioner's statements about accepting the plea offer and his counsels' advice regarding the same are not credible.

Fourth, the sentencing disparity between the sentence imposed and the sentence that could have been imposed pursuant to the plea offer is not dispositive. The Court sentenced Petitioner to 180 months' imprisonment, compared to the potential SGR of 97-121 months' imprisonment carried by the obstruction charge. Even if this difference constituted a "significant disparity,"[6] the "court must still find the defendant's evidence to the effect that he would have made a different decision but for his counsel's deficient advice to be credible." *Frederick*, 2013 WL 1846474, at *1.

In support of his claims, Petitioner submits declarations from his wife, mother, and two siblings. *See generally*, Declaration of Reyna I. Batista; Declaration of Bertrand Batista; Declaration of Angela E. Batista; Declaration of Maria Rodriguez-Batista, Dkt. Entry No. 36-3. Petitioner's wife corroborates Petitioner's account of Ricco's statements during plea negotiations about the strength of the government's case and whether Petitioner should accept the plea offer, and his mother and two siblings recount Ricco's alleged statements during trial breaks about Petitioner's innocence and the government's case. *Id.* This testimony is hearsay, and does not

---

[6] While the Second Circuit has held that a sentence more than double the plea offer constitutes a significant disparity, *See Pham*, 317 F.3d at 183, it has declined to create a "*per se* rule that a petitioner is always prejudiced when there is a significant disparity," nor has it set a bright line rule for which disparities are "significant." *See Meszaros*, 201 F. Supp.3d at 269 (citing *Muyet v. United States*, 2009 WL 2568430, at *5 (S.D.N.Y. Aug. 19, 2009)).

alter the Court's analysis. *See Haouari v. United States*, 510 F.3d 350, 354 (2d Cir. 2007) (citing *United States v. Aiello*, 814 F.2d 109, 113-14 (2d Cir. 1987)) ("Airy generalities, conclusory assertions and hearsay statements will not suffice because none of these would be admissible evidence at a hearing."); *Meszaros*, 201 F. Supp.3d at 265 n.12. First, any statements made by Ricco at trial are not probative of any plea discussions. *See Meszaros*, 201 F. Supp.3d at 265 n.12 (discounting testimony of witness not present for relevant conversations); *Munoz v. United States*, 2012 WL 666783, at *5 (E.D.N.Y. Feb. 29, 2012) (same). Second, while Petitioner's wife was present for a conversation between Ricco and Petitioner regarding the plea offer, her account simply mirrors Petitioner's account, which, in light of credible contradictory evidence, the Court has declined to find credible.

Since Petitioner's self-serving assertions that he would have accepted the plea offer are contradicted by both the sworn testimony of his counsel and his own numerous statements professing his innocence, the Court concludes that Petitioner has failed to identify credible evidence that, but for his counsel's ineffective assistance, he would have accepted the plea offer. Accordingly, Petitioner has not satisfied *Strickland*'s prejudice requirement.

### G.    The Government's Overwhelming Evidence

Petitioner further contends that his conviction was so tainted by ineffective assistance of counsel that it should be vacated. Petition at 24 ("In sum, there was hardly such a record of incriminating evidence untainted by attorney incompetence that reasonable 'confidence in the outcome' is not undermined by that incompetence."). Petitioner previously moved for judgment of acquittal and for a new trial pursuant to Rules 29 and 33 of the Federal Rules of Criminal Procedure. Both motions were denied because the evidence was more than sufficient to sustain a guilty verdict. *Batista*, 2010 WL 1193314, at *13 (noting the "overwhelming evidence of

defendant's guilt as to the narcotics conspiracy").  Similarly, here, none of Petitioner's arguments, viewed individually or in the aggregate, demonstrate either deficient performance or prejudice. For all of the reasons set forth above, Petitioner's catch-all assertion that his conviction should be set aside is denied.

## **CONCLUSION**

For the reasons set forth above, Petitioner's Section 2255 motion is denied in its entirety. Petitioner is further denied a certificate of appealability as he fails to make a "substantial showing of the denial of a constitutional right."  28 U.S.C. § 2253(c)(2); *See* Fed. R. App. P. 22(b); *Lucidore v. New York State Div. of Parole*, 209 F.3d 107, 112 (2d Cir. 2000).  The Court certifies pursuant to 28 U.S.C. § 1915(a)(3) that any appeal from this Opinion and Order would not be taken in good faith, and, therefore, *in forma pauperis* status is denied for the purpose of any appeal.  *Coppedge v. United States*, 369 U.S. 438, 444-45 (1962).

SO ORDERED.

Dated: Brooklyn, New York
        March 30, 2018

_____
                /s/
        DORA L. IRIZARRY
        Chief Judge